May it please the Court. Good morning. Jeff Lyon for Plaintiff and Appellant Sorensen. Good morning. So the essential issue in the case is whether or not there's a question of fact as to a causal connection between Mr. Sorensen's repeated complaints about Amtrak's policy of giving occurrences or the paid sick leave law in California. So Mr. Sorensen worked there for about 20 years. He's got strong reviews until after 2011 when he complains initially locally and then to the Washington DC office. Can I ask you a question about that? You said after 2011. My understanding is he didn't get an adverse review until 2013. Is that correct? Is there one in between 2011 and 2013? Yes. He got, so he received between 2008 and 2011. In those four reviews he received an average of 3.65 out of 4 on his reviews. Then in September 2012, after his November 2011 complaint to the Washington DC office, he then got a 2 out of 4. So that is, it's meeting expectations, but it's, you know, a third lower than anything he'd gotten. Was there a review in between the September 2012, was there a review after November 2011 before the September 2012 review? Yeah. He was evaluated in, I believe it was December of 2011. I think the reviews were pretty much usually given in That's a review given by the local office and his complaint was in November of that year to the Washington DC office. So it's not clear that the local office heard about the Washington DC complaint and he had complained earlier in about March of 2011 locally to two folks in his office about the policy and he got no response. So there was... The first adverse action that you're saying exists in the record is the November performance review, the one where he got a rating out of 2 out of 4? That's the first adverse action? Yes, Your Honor. And then he gets an email back in, I guess it was November of 2012. He's told by the Washington office it's a local issue and then in June of 2013 he attends the meeting. It's a group meeting of the management. An Amtrak FMLA lawyer comes and describes the policy and then he openly questions the policy as to whether or not isn't this... Are you disciplining employees for taking FMLA? So can I ask a question? Your briefs all talk about the policy. The policy as written seems entire... It clearly says that these are not to be considered. When you're using policy, you're using shorthand for the practice? That the company wasn't actually following the written policy and they were not allowing this vacation to be... Or the sick time to be... Or FMLA time to be used? Yes, Your Honor. So in the in the record we asked witnesses whether or not the computer would flag... Did the computer automatically issue an occurrence when the employees out for three or more... Or one or more days? And the answer was yes. And I said, well does the computer flag it if it's also entered as an FMLA day? Or does it prevent you from issuing an occurrence for an FMLA day? And the answer was no. So the computer was set up so that it would actually just automatically charge an occurrence for the absence. And then... And so people were getting those occurrences. And then we decided to... And no one was going back through manually? Like if the employee came in and said, hey, you know, I think you've wrongly put me down for an occurrence here. Was that changed if it was brought up verbally? I think the computer allowed that. However, there's evidence that management would then take it from an FMLA and put it back to an unexcused absence. So in or about September 2015, one of the employees complained. I think it was Patricia Dial complained to Mr. Sorensen that she had FMLA days that had been granted, but then they were changed to occurrences after that. And that was one of his later complaints to his boss, Rita Crozier, that the practice was that they're something... The district court pointed to numerous positive reviews that were given to him after he started complaining about the policy and concluded that the positive reviews taken together with the fact that he wasn't terminated for another year do not support the inference. In other words, that the causal connection is argument is weakened by the fact that there were How do you respond to that? Okay, well, one of the positive reviews was 2011, so that's like within a month of when he complains to Washington and after the locals have ignored him. So I think they may not have had time to digest the complaint. But one of the other reviews the district court pointed to is the September 2012 evaluation, where his average went down from 3.65 over the 2012 review, where he met or exceeded goals, overall elicited positive feedback, enthusiastic about keeping his team well-informed, exhibits good listening skills, dedicated to motivating the team. So overall a positive review. No, Your Honor, because what matters is the overall number, and the very next number is one out of four, and that's in September 2013. And if you read his actual metrics, what his team was actually performing, they're like in the 97th percentile. He's scoring on the actual performance of his team. They're like three out of four across the board, and he still gets a one that's completely unsupported. Well, but wasn't that one after he'd had the discussion in the meeting with the lawyer? No, that's exactly right. So he had the discussion with the lawyer June, and he gets the review in December. But I think it's, I mean it does become tricky, like is that retaliation? They didn't seem to be giving him the review because he'd raised the issue, rightly or wrongly. We weren't there obviously, but they seemed to say look, you were disrespectful in how you raised that. And I mean there's an inference there that you stand up in an open meeting like that, and go after an attorney who really probably isn't familiar with the facts, that maybe that's not the right way to approach it. And so it doesn't seem unreasonable for me that he would get a negative review to say, hey look, you exercise poor judgment in how you raise this issue. Well, I mean the purpose of his job is to conduct, you know, run this phone bank for customer service for Amtrak. His job is not to attend a meeting and just absorb whatever the Amtrak attorney says. And that was a one, a single event that lasted, what, 15 minutes or so out of the entire year of performance. All his metrics as his actual performance are extremely high. I think they were among the highest in the office, and he's given a one out of four. And then if I can just jump over, there was the question about didn't he get other good reviews. So the 2014 review was provided for the first time after about six rounds of briefing on the motion for summary judgment. It was not produced in discovery, had no Bates number on it, when everyone knew that the key issue in the case is, is this retaliation for a complaint, or is the chain of causation broken by a good review in the interim? And lo and behold, there's suddenly a review that's unsigned by the plaintiff or by anyone, when all the prior reviews are signed by both of them. So you're saying we shouldn't consider the 2014 review? You should consider it as false pretext, as, as a diversion. Because it wasn't signed? And it wasn't produced, and it wasn't produced in discovery. You say that review was also given during the litigation, when they knew they were getting sued for retaliation? That, no, that review was given in December of 2014, according to the date on the review. So it was after, it was before his subsequently constructed? What are you saying about that 2014 view? I'm saying if you put that review in a jury room, that, and you're going to have a juror saying, why does he get, why does he get a positive review in December 2014, when that very year, he's placed on the second performance improvement plan in 20 years, and he had received a final warning in September. He's put on a performance improvement plan in November, and then in December, he gets an evaluation that's positive, and mentions nothing about a final warning, or two performance improvement plans. It's interesting though, because you didn't raise this argument until your reply brief up here. And I understand you didn't have an opportunity in the district court to respond to that. But why didn't, I mean, to the extent that this is a good argument, why didn't you raise it in your opening brief? And is it waived if you didn't? Well, I don't think it's waived, because it's the document. But you knew it was in the record below. I mean, that, that's where I have a hard time with your argument. Is you, you're trying to claim that, well, this doesn't exist, I mean, are you, is your client denying that he got the review, and that it was given to him at the time that it said it was? It didn't come up during the litigation, so I really don't know. But it came up before the district court. No, because it, because we had had a back-and-forth briefing and a hearing on the motion for summary judgment. The judge said he wanted more briefing. So then we submitted a follow-up briefing, and then in the reply of the follow-up briefing, this is the first time I've ever seen this. I understand why you didn't address it below. I understand that. Although you could have submitted a server reply. But the question is, why didn't you then address it while it was up on appeal? By the way, I'm not sure that it's dispositive, so I don't want to make more of this than it needs to be. But, but I don't understand why you didn't bring it up in your opening brief. You know, I might have been fooled by it, thinking that this is a legitimate document. It's a legitimate... You didn't think to question it until the reply brief came up, and you saw what they said in the opposition. That's all I can conclude. I don't remember what my thought process was. That's all I can conclude. Help me on something else before you run out of time. There were some things that the district judge said that made me wonder about whether his determination could be made that there was no genuine issue of material fact. He mentioned that some of Sorenson's testimony was self-serving, it was uncorroborated, it was unsupported. And I thought, so what? We've got case law that says man swears to something, that's evidence. And whether it's persuasive evidence or not is up to the jury if there's a genuine issue of material fact. What I want you to do now is give me a list of things that had a bearing on the result, so they're material, and where there is a genuine issue of fact. Just recite a simple list. All right, the evaluations of 2008 through 2011 with the 3.65 average, the... Wait a minute, you've got to tell me where the judge resolves an issue of fact where he shouldn't have. He should have left it to the jury. In his opinion? Yeah, express or implied. Like where Sorenson says one thing and the railroad witnesses say the other thing, and he says, well I believe the railroad witnesses because Sorenson's testimony is self-serving and uncorroborated, that sort of thing. Okay, so just on the pretext arguments, the reasons for the termination, the judge determined that Sorenson was not credible and in his testimony that he had been doing the ride-share, same ride-share data entry with employees knowing about it since 2008. Suddenly that was unacceptable in late 2015. Was there evidence that the company knew about that in 2008? I mean, just that Sorenson's a manager and he's doing it, and so his... So the evidence is he said it under oath? Yes. Okay, and the judge says I don't believe him? Yeah, he didn't, he accepted... It's not credible, it's a fancy way of saying I don't believe it. Yeah, yeah. Okay, next. Okay, the district court said that part of the reason for termination was Amtrak saying the scanner, that Mr. Sorenson was improperly using the scanner because he allowed some subordinate employee to use it because it scans tickets, and then Mr. Sorenson testified that the scanner has a generic username and password labeled on each scanner so everyone can use them, and the judge just didn't feel like... I guess that was credible. What did he say? We don't care about what he felt. I think he said that Mr. Sorenson improperly allowed a subordinate to use the scanner. And Sorenson had said what? Sorenson did allow other employees to use the scanner because that was the practice and the username and password for using the scanner is printed on the scanner, so there's no restriction on using the scanner, and I don't believe there was any document saying that. Okay, next. All right, then Rita Crozier also terminated him for going into the system and approving employees for time off manually, and the judge said that Mr. Sorenson's self-serving testimony that he had been authorized by Crozier herself to do that a couple years earlier was not credible, but we attached an email from Crozier to Mr. Sorenson asking him to do that exact function. The email is corroboration. I don't care about corroboration right now. I'm just trying to find out if they're genuine issues of material fact. Right. So you're saying Sorenson says I was told it was okay to approve the time like this. Crozier says it wasn't and you're fired. Right. Okay. And then of course the court's seems to be its main point was that Sorenson did not complain about the violation of FMLA. He had been complaining so long and there's no temporal or causal connection between his complaints and the termination, but Sorenson testified that his complaints, you know, he had been threatened, he had been escalating his complaints in 2015 and he testified that on September 15th he sent an email to Crozier naming five employees who had been given disciplinary action or charged occurrences for FMLA time and then he was terminated two and a half months after that. So the court was not credible. What was not credible? That Mr. Sorenson was continuing to complain about the occurrence policy practice in late 2015. We've taken you over time. Did you finish your questions in terms of the this 2014 evaluation that the district court felt broke the chain of causation or contributed to it and there's no evidence that was even given to Mr. Sorenson and he had no opportunity to testify. He wasn't shown that evaluation in his deposition so he had no opportunity to say I know I never got that. All right, thank you. Good morning, Your Honor. Michael Gregg. Your Honor's Michael Gregg for Appellees Amtrak National Passenger Railroad Corporation and Rita Crozier. Thank you for giving me the opportunity to address you today. I want to start by just saying that the trial court's order accurately applied the law, was sound and the appellant has not pointed to any error that the trial court committed. Counsel, I agree with you that he that the appellant doesn't seem to really have legal error on his side. What I'm worried about in this case is it sounds like there are material disagreements on facts and why not try the case? The judge can't try the case on summary judgment. So, Your Honor, I'll briefly address that. So, like you can't say, well, I don't believe Sorenson because he's not corroborated and by other things on some of his claims and because what his testimony is self-serving. Those are reasons that a jury might choose not to believe Sorenson but it doesn't matter at summary judgment. That's my big problem with your case. Got it, Your Honor. So, let me respond to that, Your Honor. So, Sorenson has the burden of establishing the element of causation and the district court found that he did not establish causation because of the underlying, after considering the totality of the circumstances, the district court considered the fact that after Mr. Sorenson made complaints about or expressed his views that the Amtrak's attendance policy was unlawful, he received four positive reviews even going through the end of 2014. In fact, the district court found that circumstantially, considering all the facts as well, including plaintiff's own testimony, there wasn't a causal connection between his complaints and any adverse action. In fact, but on that score, counsel, the temporal proximity as a way of determining whether there's a causal connection, it's a more difficult analysis if there's a pattern of activity versus the one event, right? So, if you tie it to the one event and say, well, that there's no temporal proximity there. So, I think you haven't really established causal connection. But here, you've got somebody who's worked for the company for, what was it, about two decades without issue. Am I correct in that he's been with the company for two decades without really any issues? Your Honor, for purposes of his termination, we didn't litigate his first ten years because he was in a completely different position, function, and role. There were some warnings and the like, but we didn't think it was relevant to introducing the record. So, are you saying that there's nothing in the record? There's nothing in the record going back 20 years because it just wasn't pertinent. So, that's basically his testimony that he basically worked for this company, I think, 18, 20 years, something like that, without any issues. 2011, he starts to complain. And then from there, all the way up into his termination date, there were some positive indications as there had been in decades past. But then the negative review started happening. So, there's a pattern here. The district court, in its temporal proximity analysis, seems to me to haven't really clearly identified or discussed that pattern of negative action and how that ties in to his proof of the causal connection. Can you address that? Yes, Your Honor. I think that the court addressed that issue. The court went through and addressed the first complaint, which started in January of 2011, and went all the way through, I think, the middle of 2015. And there were various complaints. The first one was to a supervisor where he opined that they should look at whether or not the attendance policy was unlawful. And after that, he received a That's my concern, right? When you have this pattern of activity, it's a mixed record. He got some positive reviews, but he also, fairly shortly after he first started complaining, got some negative reviews. So, the district court looked at the positive reviews as breaking the causal chain, but didn't really address the negative reviews. Shouldn't the fact that the negative reviews started happening shortly after he started complaining, isn't that relevant to analyzing the causal connection? It is, and I think the district court did address those in the order. Understanding that you don't have to show, we don't have to conclude, that the negative reviews were because he wouldn't shut up about the illegality he claimed. The only question before us, or the district judge, is whether a jury could decide that the negative reviews were because he wouldn't shut up about the claimed illegality. Correct, Your Honor. So, the mere fact that someone complains about something in the workplace doesn't absolve them of any liability for further action. So, if I complain about something illegal in my workplace, I can't then, for example, start yelling or cursing at someone. So, and there's case law saying that the fact that one complains about a particular issue doesn't mean that an employer then must ignore everything that the employee does. And so, in all the instances that we're looking at the discipline, for example, overriding through a back channel the electronic timekeeping system to approve vacation for employees without authorization. That's a specific thing. It's a specific act. That's ultimately why it was terminated, right? Exactly. That was the issue. That looked like a serious reason to fire somebody, if he's saying somebody's leave was okay when it wasn't. Right. As I recall, he says that even though the written policy said you can't do that, Crozier told them morally that he could. And the judge says, I don't believe him. Why isn't that for the jury to say? In fact, a close reading of the district court's order shows it's not what the district court said. So, the appellant said that he was authorized to enter the workforce management system and Amtrak has certain thresholds for staffing. They want to make sure that they don't go below a certain threshold so that they have customer service representatives that are available to field calls and the like. And if it goes below a certain threshold, they may not have employees and causes, obviously, disruption and the like. So, this is a policy that everyone knows. The declaration that we submitted of George Vogel, who is the administrator of that system, shows that they did an investigation because they didn't know how these thresholds were bypassed. He shows that it was through a specific backdoor application that ultimately they had to do some form of forensic investigation to find out that it was, in fact, Mr. Sorensen that used this backchannel way to approve vacation below the thresholds. So, Mr. Sorensen simply saying, I have authority to do that, is not evidence of... Didn't he say more than that? Didn't he say that Crozier told him that was okay? He said Crozier told him, but, Your Honor, if you look at the shifting explanations, Mr. Sorensen said that he was given access to a share drive and that share drive gave him authorization to do what he did, override the thresholds. The share drive is simply a... Understand my question. I'm not asking you, wasn't Sorensen right? I'm asking you, wasn't there enough here so a jury should decide whether Sorensen's just making this stuff up and all these justifications are fake, or whether the judge can decide? No, Your Honor, because I think the court's order specifically addresses Mr. Sorensen's allegation, so... The district judge can't make findings of fact on summary judgment, and we reviewed de novo, so I don't care what the district judge thought in terms of making my own determination. I can't defer. I'm not allowed to defer. Understood, Your Honor. Let me cite to you in the record the specific evidence that shows that this is not an issue of fact. So, as an example, when asked, and Your Honor wants to... Are we focusing specifically on the overriding... Let me find the applicable text. So, in his testimony, the appellant claims that he received authorization from his supervisor, Rita Crozier, and Lucas Hernandez, to perform this backdoor approval of vacation below established thresholds, and he claims that he received an email from Rita Crozier giving him this authority, and when you look at the actual email, there's no such authority that's given in that email. I mean, that's his own... Was he relying solely on the email, or did he testify to an oral authorization as well? I just don't recall from the record. Your Honor, I believe it was an email authorization that he said... He also said she signed what's called a logbook, and a logbook is where one, as his testimony was, that she would sign the logbook when... This was when he first started in the department in 2014. This override occurred in 2015, like over a year later. So, when he first enters the department under Rita Crozier, she signs a logbook to give him access to a share drive. He claims that her signing, her initialing the logbook, is in and of itself giving him permission to access the share drive, but the logbook itself says no such thing. The email that he sends, that he says is proof that he had management system, if you look closely at that email, there's no such thing. So, all the evidence... That particular instance, I agree with you that the email doesn't seem to back up his oral testimony, that that would have provided him the authorization to override, but there were other instances as well that the district court discussed, where he had a version that didn't appear corroborated, and it appeared that the inferences were drawn in favor of the letting it go to the jury, for the jury to determine his credibility. So, Your Honor, so, let me just, if I could briefly respond to that. So, in order to show retaliation, he first has to show causation. If the elements of a prima facie claim for retaliation, if Sorenson first establishes a prima facie claim, then the burden shifts to Amtrak to show that its actions were legitimate, non-retaliatory reasons. And so, when you're analyzing non-retaliatory reasons, the plaintiff or the appellant then has to show whatever that reason is that's advanced by the employer, it's pretext. It's pretext for discrimination. It wasn't the real reason. And the case law says that disapproving or saying, or characterizing or disagreeing with the company's position, or saying that didn't happen, that is not sufficient to overcome pretext. And I can, and there... Let me ask you about some testimony then. I have trouble understanding it because all the internal Amtrak jargon and stuff, so I may completely misunderstand this and you will educate me. I'm looking at excerpts pages 881 and 882. Well, in August of 2014, she, that's Crozier, approved the service requests that upgraded my EWFM account to include the privilege. And then again in late August or early September, she instructed both Peggy and I to engage in that activity. And I think, but I'm not sure that he's talking about the activity that we're talking about, what you call the backdoor stuff. And in August of 2015, she did what? She instructed Peggy and I to take waitlist requests, is what they're called, and approve additional vacation time for our employees. Did she instruct you that you had authority to enter workforce management, to override, and I think enter workforce management is the backdoor you're talking about, to override vacation thresholds on your own? That isn't what I did. So what did you do? I approved waitlist requests for employees in the customer service department. And you did it by signing on to workplace management, right? That's the backdoor. Correct. And you approved vacation days, even though they exceeded the threshold entitlement. And he says, as I was instructed. Why isn't that enough to set up a genuine issue of fact on whether he did or did not have authority to do what he did on the vacation days? Your Honor, because the Amtrak has a specific, as we submitted in before the district court, there are only about 15 individuals in the company, and they're all in the timekeeping department that have the authority to enter the system through a computer and approve vacation below the certain threshold. This may be all wrong. I mean, it may be that Amtrak heartily and strongly and properly disapproves of this sort of thing. But if his boss tells him it's okay, it seems like that would still enable him to say, I didn't know I was doing anything wrong, because often the office practice differs from what the book says. Your Honor, and if you look at the declarations of Peggy Beverage, Diane Pitts, Rita Crozier, supervisors have authority to make us to the timekeeping department that the thresholds be reconsidered in a particular circumstances. And then management has a discussion, and they determine whether or not on a particular day the... Okay, so they're all saying, no, no, no, we follow the book from Amtrak Washington. But he's saying they told me to do something that it's not by the book, but that's the office practice that they approve. But the email that he points to that says he has that authority is an email from Rita Crozier. He says they talked to him, they said words. Right. That's the email. The email looks like failed corroboration, but the words, that's still evidence under Rule 56. Right. And what he's referencing, Your Honor, is approving... Supervisors can make a request to prove vacation below the thresholds, but entering the system, entering Amtrak's electronic system to a backdoor application that no one really had... Only an administrator... Shouldn't have done it. Has access to... According to the Amtrak book, let's stipulate that he shouldn't have done it, if he'd been following the book of regulations from Amtrak. But the point is, so once at the pretext stage, and there's case law that's that's swirling on this that says at the pretext stage, disagreeing with the employer's position or reasoning is not adequate to overcome pretext. You have to then present evidence that, no, the... This isn't just a and basically they kept telling him to shut up, and he wouldn't shut up. Right, but in response to his... In other words, at the applicable standard, the employer Amtrak comes forward with a legitimate non-discriminatory reason for its actions. And by its face, its actions are legitimate non-discriminatory. Then the plaintiff has to come forward and... And I think what Judge Kleinfeld is saying is that he came forward with his own under oath testimony. Whether that creates a triable issue, I think that's the determination that we have to determine. And I can... Your Honor's there... In our... In the court's order, in the trial court's order, and in our brief, we cited to four cases, at least, in the Ninth Circuit saying that it is well established that a district court need not find a genuine issue of fact if it's based on uncorroborated self-serving testimony. For example, Your Honor, if I... We've got your argument. If I say to a... If I work at a bank and I say that I have authority to wire going to someone's customer's accounts and withdraw money, my statement in and of itself is not... It's not... It can be rejected by a court because it's self-serving uncorroborated evidence. And to overcome pretext, you have to come forward with substantial and specific and direct evidence. All right. You're over time. Thank you very much for your argument. Thank you. I think you're over time as well, but we've taken counsel well over time, so let me put a minute on the clock and give you the last word here. Thank you, Your Honor. So in Exhibit 1002, which is an email of April 21, 2015, Mr. Sorensen is confronted with an issue where another employee has given a... One of the employees a personal date in excess of the threshold, and Mr. Sorensen approved it, told him to be more careful, and that email from Sorensen was sent to Peggy Beveridge, one of the other managers, and copied to Rita Crozier. So you can say, hey, what are you talking about? You can't authorize, you know, any personal time off. So, you know, that would be evidence that he did have the authority to do it, and he copies his boss on it, and that's in just a few months before he's terminated. And then briefly, he did testify regarding this issue of when was this 2014 evaluation, when did it come to existence. Mr. Sorensen testified that in the summer of 2015, he complained to Crozier that the only performance evaluation in his online employee profile that other managers look to to decide whether or not someone gets a promotion was the 2013 evaluation, where he was given a 1 out of 4. So the 2014 evaluation was not in his online profile as of 2015, doesn't arise until the reply reply in the supplemental briefing. And we've got it. Yeah, okay. Thank you very much. The matter is submitted.
judges: Kleinfeld, Nguyen, Nelson